JAMES RATTEREE, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. When the juror's name was A. J. Barry, and on the list furnished the defendant's counsel was A. J. Berry, and it was shown that he was generally called Berry, it was not error in the court to put the juror on the prisoner.

2. The sayings of the deceased which were offered in evidence, were not part of the *res gestæ*, and even if they had been made *in articulo mortis*, they were matters of opinion, and not of the facts connected with the killing.

3. The charge of the court fully covered all the provisions of the Code, and also the points involved in the request of the defendant's counsel which were applicable to the case.

Criminal Law. Jury. Evidence. *Res gestæ.* Charge of Court. Before Judge HOPKINS. Fulton Superior Court. October Term, 1874.

James Ratteree was placed on trial for the offense of murder, alleged to have been committed upon the person of W. L. Clifton on December 23d, 1873. The defendant pleaded not guilty.

Amongst the jurors put upon the defendant was one by the name of J. A. Barry. The name upon the list furnished to the defendant was J. A. Berry. No such name appeared upon

Ratteree *vs.* The State of Georgia.

the jury lists for the county, but he stated on oath that though his name was Barry, yet he was generally called Berry. When his name of Berry was called he answered to it. He was then sitting within ten feet of defendant. The court, on objection made, held him competent, and the defendant was thus compelled to challenge him peremptorily. To this ruling he excepted.

The evidence showed that the deceased and other friends, were going from the city of Atlanta to Fayette county in wagons. That when about one-half mile beyond West End he met the defendant, his two brothers, and a boy by the name of Silvey, coming in the direction of the city with a wagon drawn by oxen. That a controversy ensued, the details of which, in view of the decision, are immaterial here, in which the deceased was mortally stabbed by the defendant. That the deceased was placed in a wagon and carried about two hundred and fifty yards, when he said he could go no further, fainted and fell out of the wagon. That he was placed on the side of the road and rubbed with camphor. That the time that elapsed between the stabbing and the rubbing with the camphor was " a few minutes."

Under these facts the defendant proposed to prove by a witness by the name of Harbuck that when the deceased was being bathed with camphor, he said "if he died and went to hell it was his own fault; that the boys were not to blame." This evidence was excluded and the defendant excepted.

The evidence further showed that from the place above alluded to he was carried to the house of a Mr. R. W. Wood, where he remained about two weeks, during which time he had divers conversations with Wood, in all of which he expressed the belief that he would recover.

The defendant proposed to show by Wood that in one of these conversations the deceased had stated "that he did not want the boys hurt; that he was to blame; that the boy (defendant) was not to blame, that it was his own fault; that all he wanted was to catch them out some time and give them a whipping."

This evidence was excluded and the defendant excepted.

The evidence further showed that the deceased died from the wounds received at the hands of the defendant.

Various requests were made to charge, all of which were covered by the general charge of the court.

The jury found the defendant guilty of voluntary manslaughter and recommended him to the mercy of the court.

A motion for a new trial was made, upon the ground that the court erred in ruling the juror, Barry, competent, in the above stated exclusion of the testimony of Harbuck and Wood, and upon other grounds not material here. The motion was overruled and the defendant excepted.

GATRELL & STEPHENS; A. W. HAMMOND; WRIGHT & HILL, for plaintiff in error.

JOHN T. GLENN, solicitor general, for the state.

TRIPPE, Judge.

1. Though the juror's name was spelled *Barry* he was generally called *Berry.* The name on the list furnished the defendant was the name by which the juror was generally known. Independent of the doctrine of *idem sonans*, it does not appear that the defendant could have been misled or injured. No showing was made that such was the result of misspelling the juror's name on the list furnished him. He had the very name by which the juror was known, and the mere fact that the letter " a " should have been in the place of " e " was not sufficient ground for a challenge either to the juror individually or to the array. Besides, " *Hutson* " and " *Hudson,*" " *Herman* " and " *Harman,*" have been held respectively to be *idem sonans:* 18 *Georgia*, 738; 3 *Ibid.*, 266. There is as little difference between " *Barry* " and " *Berry.*"

2. The sayings of Clifton, the deceased, were not part of the *res gestœ.* The declaration offered to be proved by Harbuck, was at a time after the rencounter which is not exactly given in the evidence. But the rencounter was over, all

parties had left the scene, Clifton had been carried some two hundred and fifty yards, had fainted and was taken off the wagon and laid by the roadside. After camphor had been procured from a house near by, and used on him, he made the statement proposed to be put in evidence. Had the state offered to prove what Clifton then said as evidence against the defendant, scarcely a doubt could exist as to its being inadmissible. It would not be claimed as being part of the *res gestæ.* Is the rule different when defendant offers to prove it? This is not a case of Clifton against the defendant, but a prosecution by the state for a violation of her criminal law. Statements or admissions made by a party are admitted against himself. But, though he may have been the person assaulted, or upon whom an offense was committed, his sayings afterwards are not competent either for or against the one who is prosecuted for the crime, unless they are so connected with the transaction as to constitute a part of the *res gestæ.* There was no such connection in this case. That which was proposed to be proved by the witness, Wood, occurred probably a week or more after the wound was given. Nor was it proved that what was heard by either of these two witnesses, was uttered by Clifton *in articulo mortis.* Nothing appears to show that he thought he would die. Even had they been so uttered, they amounted to nothing more than opinions. No fact connected with the killing was stated: 22 *Georgia,* 478; 38 *Ibid.,* 58. In the first of these two cases it was proposed to prove a declaration of the deceased almost identical in import with what it was offered to show Clifton said. The evidence was rejected on the trial and the ruling affirmed by this court.

3. Upon the other exceptions it is sufficient to say, the charge of the court fully covered all the provisions of the Code and the points in the requests of defendant's counsel which were applicable to the case.

Judgment affirmed.