## KEARNEY *v.* THE STATE.

1. The declaration of a person who died of a mortal wound, to the effect that in the declarant's opinion the infliction of this wound was accidental, is not admissible in favor of the slayer upon his trial for murder.

2. It is not improper for a trial judge, when he sees that a witness is embarrassed or hesitates while testifying, to caution him not to become excited and to think over what he is going to say.

3. Where in a criminal trial the solicitor-general makes an improper statement of which the judge is not aware, or indulges in an improper argument which the judge of his own motion promptly stops and rebukes, and no ruling as to these matters is invoked by the accused or his counsel, it is too late after verdict to take advantage of such irregularities.

4. When in a trial for murder there is a doubt as to whether the pistol with which the homicide was committed has been put in evidence, there is no impropriety in the judge's inquiring as to the truth of this matter, in order to satisfy his own mind "whether the pistol had been formally offered in evidence."

5. While as a general rule the contents of a writing can not be proved by parol, if the fact that a witness has knowledge of the existence and of the amount of an insurance policy is relevant as affecting her credibility, such knowledge is a proper matter of inquiry, and it is not erroneous to allow the witness to testify to the same, and, in so doing, to state the amount of the policy, "if she knows it as a substantive fact independent of the policy."

6. It is not incumbent upon the judge to require the official reporter or stenographer of the court to remain in attendance until the end of a trial, in order that, in case of disputes between counsel as to what the evidence was, a party may not be "deprived of the privilege of referring to the official report of the case to refresh the recollection of the jury."

7. If the judge undertakes to instruct a jury trying a murder case as to the various forms in which their verdict may be written, and, in so doing, states what would be proper forms for all findings, from that of murder without a recommendation down to involuntary manslaughter in the commission of a lawful act, he should not omit to state, in the same connection, what the form of the verdict should be in case of an acquittal. Failure to do so is not, however, cause for a new trial when it appears that the judge distinctly charged the jury that, in a certain view of the evidence, they should acquit the accused, and when it is manifest from their finding him guilty of the highest offense charged that the omission in question could have done him no injury.

8. There was no error in the charges complained of; the evidence warranted the verdict, and the record discloses no cause for a new trial.

Argued July 5, — Decided July 20, 1897.

Indictment for murder. Before Judge Falligant. Chatham superior court. March term, 1897.

*T. S. Morgan Jr.* and *T. L. Hill,* for plaintiff in error.

*J. M. Terrell, attorney-general,* and *W. W. Osborne, solicitor-general,* contra.

FISH, J.   Patrick Kearney was indicted for the murder of John W. Wyness.   He was convicted, and upon his motion for a new trial being overruled, he excepted.

1. The court properly refused to permit the witness Hallinan to testify, in behalf of the accused, that Wyness, the deceased, the day after the shooting, told the witness that the shooting was accidental, and requested the witness to so inform the recorder, at the time saying that it must have been accidental, because he did not think Pat would have done it on purpose. These statements were matters of opinion or belief, and therefore were not admissible as dying declarations.   *McPherson* v. *State,* 22 *Ga.* 478; *Whitley* v. *State,* 38 *Ga.* 50; *Ratteree* v. *State,* 53 *Ga.* 570; 6 Am. & Eng. Enc. L. 126, and cases there cited.

2. It was not improper for the judge, when he saw that the witness John Coaker was embarrassed or hesitated while testifying, to caution him by saying, "Don't get excited; just think it over."   What the judge did was evidently for the purpose of eliciting the truth from the witness, and was in the interest of a fair and impartial trial, and the accused had no just cause of complaint.   In *Epps* v. *State,* 19 *Ga.* 118, Judge Lumpkin said:   "Counsel, in their zeal to acquit their clients, seem to take it for granted that the only object of courts is to convict. Until called upon to discharge the solemn and responsible functions of a judge, they never can fully appreciate the high sense of obligation under which they act to God and their fellow-citizens. . . His [the judge's] aim being neither to punish the innocent nor screen the guilty, but to administer the law correctly."

3. The solicitor-general asked the witness Coaker, "Did any of Mr. Kearney's friends ever offer you any money to testify in this case?"   The question being objected to by counsel for the accused, the solicitor remarked, "I will withdraw the witness now, as I stand prepared to prove it."   Plaintiff in error, in his motion for new trial, alleges that such statement was

calculated to prejudice and harm him before the jury. The judge certifies that he did not hear the remark of the solicitor-general, that his attention was not called to it, and that no objection was made to it at the time by counsel for the accused. It is due to the solicitor-general to say that he contended that the remark was only intended for the ears of counsel for the accused, who was sitting near by. The statement was certainly improper, but as the judge did not hear it, and as his attention was not called to it, either when made or afterwards during the trial, and as no ruling was invoked upon it at any time, it was too late after verdict to raise the point in the motion for a new trial. In *Young* v. *State*, 65 *Ga.* 528, it was held: "For counsel to sit silently by, saying nothing, asking no correction in the charge, and never bringing his complaint to the attention of the judge, until it appears among the grounds for a new trial, would be to lie in ambush both for him and the opposite party; and this the law does not encourage."

When the solicitor-general, in his concluding argument to the jury, made the improper remarks complained of, counsel for the accused made no objection nor asked any ruling in reference to them. The judge certifies that he of his own motion immediately checked and rebuked the solicitor, directing him to confine his argument to the evidence, and at the same time instructed the jury that they, also, must confine themselves to the evidence in the case and the law as given them in charge. The misconduct of the solicitor-general, under such circumstances, is not cause for a new trial. Advantage should have been taken of the irregularity before verdict. As to the proper procedure when counsel is guilty of improper conduct in the trial of a case, and as to the judge's rebuke to counsel, and his charge to the jury curing such misconduct, see *Castleberry* v. *State*, 74 *Ga.* 164; *Towner* v. *Thompson*, 82 *Ga.* 740; *Ozburn* v. *State*, 87 *Ga.* 182 (5); *Metropolitan R. Co.* v. *Johnson*, 90 *Ga.* 501; *Edwards* v. *State*, 90 *Ga.* 143; *Farmer* v. *State*, 91 *Ga.* 728; *Von Pollnitz* v. *State*, 92 *Ga.* 16; *Augusta R. Co.* v. *Glover*, 92 *Ga.* 133; *Robinson & Co.* v. *Stevens*, 93 *Ga.* 535; *Richmond & D. R. R.* v. *Mitchell*, 95 *Ga.* 79; *Ficken* v. *State*, 97 *Ga.* 813.

4. The judge certifies that his inquiry in reference to whether the pistol had been offered in evidence or not, was made to satisfy his own mind whether the pistol had been formally offered in evidence. We think there was no impropriety in his so doing. Even had he suggested to the solicitor-general to put the pistol in evidence, without more, we are not prepared to say it would have been error. In a case where the accused was charged with forging a certain order, and the solicitor had announced the State's case closed, and the judge suggested to the solicitor, "if he had not better offer the order in testimony"; to which proceeding the accused excepted, (1) for irregularity and interference by the court; and (2) because the State had closed, and it was too late to offer other evidence, the judgment below was affirmed, and Judge Lumpkin, delivering the opinion, said : " As to the right of the court to interfere in the management of a cause, civil or criminal, in reforming the pleadings and directing the necessary proofs to be adduced; in short, in assuming the general superintendence and control of the litigation before it, it is a point. of extreme delicacy with which we are reluctant to interfere. We are not inclined to deny the power in toto; still less to encourage its exercise. We see nothing in the present case to demand imperatively the corrective interposition of this court." *Hoskins* v. *State*, 11 *Ga.* 97 (4). In *Moore* v. *Cameron*, 12 *Ga.* 266, which was complaint for rent, in the progress of the case, " the court remarked to counsel for plaintiff, that to enable him to recover, he must prove the premises were rented from the plaintiff; which said attorney did by his own oath." To which suggestion of the court defendant excepted and on his exception assigned error. Judge Nisbet, delivering the opinion, said : "The suggestion of the presiding judge to the plaintiff's counsel, that it would be necessary for him to prove that the defendant rented the property from the plaintiff, was perfectly correct. It was not only the right but it was the duty of the court to make that or any other suggestion which he saw was necessary to the rights of either party." So in *Goodman's* case, 60 *Ga.* 509 (3), this court held: "Where, in the progress of a criminal trial, the court observes

that a rule of public policy has been or is being violated in practice, the judge may, of his own motion, call attention to it, and have the proper correction applied." On the same line are the many cases holding that it is not only the right but the duty of the trial judge to interrogate witnesses whenever he desires to ascertain a fact with a view to the correct administration of the law. Again, quoting from Judge Lumpkin, in *Epps's* case, supra: "We know of no limit to the right which belongs to the court of interrogating witnesses, either in civil or criminal cases, particularly the latter. The life or death of a man may hang upon the full development of the truth. The presumption that this liberty will not be honorably and impartially exercised is not to be tolerated for a moment." In *McGinnis's* case, 31 *Ga.* 261 (2), it was held that there was no error in the court compelling the solicitor-general to ask a witness a question. Unless the trial judge should manifestly abuse the discretion which is necessarily reposed in him in such matters, this court will not feel called upon to interfere.

5. Plaintiff in error asked that a new trial be granted because the court erred in permitting the State, over the objection of defendant's counsel, to bring out, under cross-examination, that Wyness, the deceased, had an accident-insurance policy upon his life for the sum of five thousand dollars; the objections being, first, that it was irrelevant, and next, that the policy itself was the best evidence. The theory of the defense was, that Wyness was accidentally killed by the accused. Mrs. Wyness, the widow of the deceased, had testified in behalf of the accused, and, upon cross-examination by the solicitor, she stated that the deceased had an accident-insurance policy upon his life. This statement was objected to by counsel for the accused, on the ground of irrelevancy. She then stated that the policy was for five thousand dollars. This last statement was objected to, on the ground that the policy was the best evidence. The judge certifies that he ruled that the witness could state the amount of the policy, if she knew it as a substantive fact independent of the policy. If Wyness had such an accident-insurance policy on his life, it might be

to the financial interest of his widow that it be proved that he was accidentally killed, and her knowledge of the existence of such a policy was relevant as affecting her credibility as a witness. Her information on the subject was material; its source immaterial. "The rule excluding secondary evidence does not apply to matter not relevant to the merits, but drawn out on cross-examination to test the temper and credibility of the witness." Abbott's Trial Brief, Criminal Causes, § 436, citing Klein *v.* Russell, 19 Wall. 439, 464; Kalk *v.* Fielding, 50 Wis. 339.

6, 7, 8. The sixth, seventh and eighth headnotes sufficiently elaborate the conclusions stated therein.

*Judgment affirmed. All the Justices concurring.*