OF THE

## STATE OF IOWA.

AT

## DES MOINES, OCTOBER TERM, A. D. 1902.

AND IN THE FIFTY-SIXTH YEAR OF THE STATE.

---

STATE OF IOWA v. J. W. SALE, Appellant.

Murder: EVIDENCE OF BAD CONDUCT: PARTICULAR ACTS: INADMISSIBLE
1  WHEN.  In a prosecution for homicide, evidence of particular
acts of bad conduct of deceased at a remote time and of which
it is not shown that defendant had knowledge, is inadmissible.

Murder in the First Degree: SUBMISSION OF.  From the evidence in
2  the case the court is sustained in submitting the question of
murder in the first degree.

Statements of Deceased: CONCLUSIONS: INADMISSIBILITY.  The state-
3  ments of deceased just prior to his death that he was to blame
for the difficulty and defendant had to do what he did are con-
clusions and inadmissible either as dying declarations or ad-
missions against interest.

Improper Argument: OBJECTION TO: MOTION FOR NEW TRIAL.  Ob-
4  jection to improper argument must be made at the time and
cannot be first heard on a motion for a new trial.

---

NOTE—The figures on the left of the syllabi refer to corresponding figures placed
on the margin of the case at the place where the point of the syllabus is decided.

Murder: EVIDENCE TO SUPPORT VERDICT. Evidence considered and held sufficient to support a verdict for murder in the second degree and the judgment of the court.

*Appeal from Page District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, DECEMBER 19, 1902.

DEFENDANT was indicted for murder in the first degree, and, being found guilty of murder in the second degree, was sentenced to imprisonment for fourteen years in the penitentiary. From this sentence he appeals.—*Affirmed.*

*W. P. Ferguson, C. S. Keenan* and *Jennings & Crose* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

McCLAIN, J.—The evidence tends to show that while defendant and one Richardson (the two having been previously well acquainted and on good terms) were, together with others, in a stall at the fair grounds in Shenandoah, remarks were addressed by Richardson to defendant charging dishonesty of the latter, to the disadvantage of the former, in connection with a game of cards on the previous evening; that the two men approached each other in a hostile attitude, and, although bystanders interposed themselves between them, Richardson struck the defendant, and defendant struck and cut, or at least attempted to cut, Richardson with a knife. The witness who testified most fully in regard to this transaction swears that, when the parties were approaching each other in the stall, defendant had an open pocket knife in his hand, and that he was attemping to make a further assault upon Richardson with this knife when he was pulled away. Both the participants in the affray then went outside of the stall, and Richardson told defendant, in threatening language, to leave; and defendant replied, in equally threatening language, that he

would not do so, and that Richardson should keep away
from him or he would be hurt. Richardson then picked up
a piece of two by four scantling about five feet long, which
was lying near by, and struck at defendant, hitting him.
twice on the head and shoulder. As to whether these blows
were violent or light, the evidence is in conflict. But
Richardson was, by the effort to strike the third.time turned
with his side toward defendant, whereupon defendant, who
had been advancing, rather than retreating, stabbed him
in the side with the knife which he still held in his hand,
inflicting a vicious and mortal wound, of which Richardson
died some days afterward. The deceased was a young and
active man, while defendant, though somewhat older, was
of slight build and of po .r health. After the affray was
over, defendant left the place, and, when told that Richard-
son was badly hurt, he said "he was not hurt as bad as he
ought to be"; and when under arrest he said to the person
who was filing the information against him, and in response
to a statement that he had cut the boy pretty badly, and
had probably killed him, "I ought to have killed him."

I.   Complaint is made of the exclusion of evidence as
to the reputation for quarrelsómeness of deceased in the
community where he previously resided. But the court
1. EVIDENCE of  admitted the testimony offered so far as it
bad condnct:
particular     tended to show the general reputation only,
acts: when in-
admissible.    and excluded the offer of the defendant to
show by a witness particular conduct of deceased which had
come within his personal knowledge. This was plainly not
admissible, for the transaction referred to was at a remote
time, and had no tendency to show the state of mind of the
deceased at the time of the affray. Nor was there any offer
to show that the previous bad conduct was known to
defendant. The case before us is not similar to that of
*State v. Beird*, 118 Iowa, 474.

II.   Error is assigned as to the action of the court in
submitting to the jury the question as to defendant's.guilt

in the first degree, with which he is charged in the indict-

2. MURDER: in first degree: submission of. ment; the contention being that there was no evidence which would support a conviction of murder in that degree, nor of an assault with intent to commit murder, as to which the jury were also instructed. But if the jury believed that defendant wilfully, deliberately, and premeditatedly took advantage of the quarrel for the purpose of killing or inflicting great bodily injury on deceased, not in self-defense or heat of blood but with malice aforethought, then they might have found him guilty of murder in the first degree; and in determining that question they might have taken into account the subsequent declarations of defendant, as indicating maliciousness and ill will towards the deceased. We cannot say, therefore, that a conviction of murder in the first degree would have been entirely without support in the evidence. The assignment of error in this respect was therefor not well taken.

III.    An offer was made in behalf of defendant to show that deceased made dying declarations to the effect that he was to blame in the difficulty between them, and that de-

3: STATEMNTS of deceased: conclusions: inadmissibility of. fendant had to do what he did. But this offer was refused on the ground that what was offered to be shown was a mere conclusion of the deceased, and therefore inadmissible, under the ruling of this court in *State v. Wright*, 112 Iowa, 436, which was to the effect that while dying declarations of deceased are admissible for as well as against a defendant charged with criminal homicide, yet that in the one case, as well as the other, they cannot be received if they state merely a conclusion or opinion. That case has ample support in the authorities. *Sweat v. State*, 107 Ga. 712 (33 S. E. Rep. 422); *Kearney v. State*, 101 Ga. 803 (29 S. E. Rep. 127, 65 Am. St. Rep. 344); *Moeck v. People*, 100 Ill. 242 (39 Am. Rep. 38). And see cases there cited and in 56 L. R. A. 375, and 86 Am. St. Rep. 649. The views of this court expressed in the *Wright Case* are so directly in point as to the evidence offered in the case

before us that the mere citation of that authority ought to be enough to dispose of the question.

Counsel for defendant urge, however, that, while the statement of deceased may not have been admissible as a dying declaration, it was competent as a declaration or admission of deceased against his own interest. But no authorities are cited in support of such a proposition. The controversy in a murder case is not between the deceased and the defendant, but between the state and defendant; and we know of no rule which renders competent in favor of the defendant any declaration of the deceased which is not a part of the *res gestæ*, nor competent as a dying declaration.

IV. Misconduct of the prosecuting attorney in argument to the jury was urged as a ground for new trial, and is now presented as a ground for reversal. We are compelled to admit that portions of the argument, as quoted, by counsel from the record, seem intemperate and unnecessarily violent in their character; but we have not in the record the argument of the counsel for defendant in addressing the jury, and have no means of knowing to what extent the argument of the prosecuting attorney was justified or excused by the presentation of the defendant's case. Moreover, no exceptions were taken to the prosecuting attorney's argument at the time and the objection cannot be first made on motion for a new trial, when, if it had been promptly made, the court might have restrained any undue zeal on the part of the prosecuting attorney, and thus have prevented the prejudice which is afterwards claimed to have resulted. Under the circumstances, we cannot grant a new trial on this ground.

4. IMPROPER argument: objection to: motion for new trial.

V. It is further contended that the jury should not have found defendant guilty of murder in the second degree, and that the evidence, at most, shows the commission of the crime of manslaughter. But we think there was evidence to support the verdict of the jury. To constitute murder in the

5. MURDER: evidence to support verdict.

second degree, no premeditation or deliberation is essential, and if, as the result of hatred and ill will, engendered by the charge of dishonesty made by deceased and his manifestation of hostility, and not as the result of heat of blood, suddenly arising from the first blow, the defendant formed, even for a moment before the striking of the fatal blow, an intention to kill or inflict great bodily injury, then the offense was murder in the second degree; and there is certainly evidence on which the jury might properly have predicated such a finding. The argument of this assignment of error takes the form, however, rather of an appeal to this court for reduction of the sentence, than for the awarding of a new trial; but the evidence, as disclosed in the record, is not such as to warrant our interference with the action of the trial judge.—Affirmed.

## Supplemental Opinion.

Per Curiam.—On a reconsideration of the record in this case on a petition for rehearing, we have become satisfied that while there is no error of law or lack of evidence such as to require a reversal, it would be in furtherance of justice, under the circumstances as shown, to reduce the sentence to ten years, which is the lowest sentence authorized by the statute for the crime of which defendant was convicted, and it is so ordered.