THE STATE OF NEW JERSEY, PLAINTIFF IN ERROR, v. SOPHIA MEYER, DEFENDANT IN ERROR.

Argued June 19, 1900—Decided November 19, 1900.

On the trial of an indictment, charging the defendant with the statutory misdemeanor of attempting to cause the miscarriage of a woman pregnant with child, in consequence whereof the woman died, the dying declarations of the woman are legal evidence.

---

On error to the Supreme Court. For opinion of the Supreme Court, see 35 *Vroom* 382.

For the plaintiff in error, *Nicholas C. J. English,* prosecutor of the pleas.

For the defendant in error, *Jeremiah A. Kiernan*

The opinion of the court was delivered by

DIXON, J.  The defendant was indicted for having, without lawful justification, thrust an instrument into the womb of A. K., a woman then pregnant with child, with intent to cause her miscarriage, in consequence whereof the woman died.  On trial in the Union Sessions, the dying declarations of A. K. were admitted in evidence on behalf of the state, against the defendant's objection, and the defendant was convicted.  On error, the Supreme Court reversed the conviction because of the admission of that evidence.  The reason assigned by the Supreme Court for such reversal is that, as the legislature, in the Crimes act of 1898 (*Pamph. L., p.* 794, § 119), declared the act of the accused to be a high misdemeanor whether the woman or child died in consequence thereof or not, the death of either is not now an essential element of the crime, but is merely a fact to be considered in fixing the penalty.

This reason, we think, is unsound.

While it is true that the statute calls the prohibited conduct a high misdemeanor, whether the woman or child die in consequence thereof or not, yet on due attention to all its provisions, it clearly appears to describe two high misdemeanors, one where the woman or child dies in consequence of the operation, and the other, where death does not ensue

A noticeable feature of the Crimes act of 1898, not found in our earlier criminal laws, is that the section defining an offence merely designates it as a misdemeanor or a high misdemeanor, without fixing the punishment for guilt, and then a separate section declares what punishment may be imposed on persons convicted of a misdemeanor, and what on persons convicted of a high misdemeanor.  When a penalty different from those thus generally prescribed is intended, that is indicated in immediate connection with the definition of the crime.

In accordance with this design, the offence against pregnancy, when death does not result, is simply called a high misdemeanor, leaving the penalty to be ascertained from the section declaring the punishment appropriate to that degree

of guilt; but for such offence, when death results, a severer penalty is provided by the section defining the crime, and, of course, the more aggravated offence is also called a high misdemeanor.

Except for the modification which this purpose of the revisers dictated, the language of the statute is substantially the same as before, and does not manifest, we think, any intention to blend what before were distinct offences into one. It still remains true, as was ruled in *State* v. *Gedicke,* 14 *Vroom* 86, 92, that if the indictment does not allege the death of either woman or child, the offence charged is only the minor one, and that a sentence imposing the severer penalty on a person convicted under such an indictment would be erroneous in law.

This offence is not put by our statutes on the same footing in this regard as is the crime of murder. Whether a person convicted of murder has been convicted of murder in the first degree or in the second degree, is, under the statute, to be determined, not by the indictment, but only by the verdict. The indictment is to be simply for murder, without setting forth the distinctive characteristics of murder in the first degree; but the verdict is to declare the degree. If nothing be proved save what is alleged in the indictment, the guilt reaches only to the second degree; but if the proof goes beyond and establishes the requisite circumstances of aggravation, a conviction of guilt in the first degree is lawful. No doubt it is anomalous that an accused person may be convicted of guilt above that explicitly averred in the accusation, but it rests on the language of the statute (*Pamph. L.* 1898, *p.* 794, § 107), and is thoroughly settled.

No such provision, however, exists as to the crime we are now considering, and we deem it indubitable that, to warrant the severer sentence, the indictment must charge all the statutory constituents of the more aggravated crime. Its distinguishing feature—the death of the woman or child as a consequence of the attempted abortion—must therefore be alleged in the indictment, and thus made the subject of investigation and proof at the trial.

When the death of the woman is thus charged as an element of the offence, necessary to be proved in order to establish against the accused the graver crime, and subject him to the severer punishment, her dying declarations are legal evidence, according to the rule as laid down by this court in *Donnelly* v. *State*, 2 *Dutcher* 601.

We are aware that the question whether dying declarations can be received when the indictment does not specifically charge either murder or manslaughter, has been answered in the negative by some tribunals whose judgments are entitled to very great respect; but, after due consideration of those decisions, our views coincide with those expressed in *Montgomery* v. *State*, 80 *Ind.* 338, by Chief Justice Elliott, whose discussion of the subject is so thorough as to preclude any attempt at further exposition.

Of course, under this decision, an accused person may be exposed to the danger of having the dying declarations of a woman put in evidence, when her death is charged as the consequence of an abortion, but is not fully proved to have resulted therefrom, and thus they may be used in the jury-room as evidence to convict him of abortion merely without resulting death. But such a danger is not peculiar to trials of this nature. It may always exist when evidence is legally received by the court for a purpose not ultimately accomplished. As, *e. g.*, in cases where the declarations of one charged as a conspirator are admitted against all the defendants, and yet he is acquitted by the jury; or where one charged with manslaughter is convicted of assault and battery only, under the doctrine asserted in *State* v *Thomas*, 35 *Vroom* 532. The danger thus incurred must be guarded against as far as possible by appropriate instructions from the court.

Our conclusion is that the evidence was properly received; that the judgment of the Supreme Court should be reversed, and the judgment of the Sessions should be affirmed.

*For affirmance*—None.

*For reversal*—DIXON, GARRISON, COLLINS, FORT, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES.    9.