(36 South. 810.)

No. 15,233.

STATE v. HARRIS.

(May 23, 1904.)

HOMICIDE—DYING DECLARATIONS.

1. Dying declarations are statements of material facts concerning the cause and circumstances of a homicide, made by the victim under a solemn conviction of impending death. Being a substitute for sworn testimony, they must be such narrative statements as would be admissible had the dying person been sworn as witness. The statement, "That's all right; Bill Harris is my friend, and I don't want nothing done to him"—is not admissible as a dying declaration.

(Syllabus by the Court.)

Appeal from Twentieth Judicial District Court, Parish of Têrrebonne; Louis P. Caillouet, Judge.

William Harris was convicted of manslaughter, and appeals. Affirmed.

L. F. Suthon and Benjamin Felix Winchester, for appellant. Walter Guion, Atty. Gen., and Whitmel Pugh Martin, Dist. Atty. (Lewis Guion, of counsel), for the State.

MONROE, J. The defendant, having been indicted for murder, appeals from a conviction for manslaughter and sentence of imprisonment at hard labor. The only question brought up for the decision of this court is that presented by a bill of exception, from which it appears that J. D. Stephen, a witness for the defense, having testified that the deceased said, "I am stabbed to death, telephone to my mother; I will never see the sun rise again"—was asked "how all this thing took place," whereupon the district attorney objected, and the jury was retired. The witness then said that the deceased made no answer to his question, but continued to talk about his mother and telephoning to her, and said, "I don't want nothing done against Bill Harris," and the judge, having refused to allow the witness to testify before the jury to what was thus said by the deceased, the bill was taken.

In the per curiam the judge says that after the jury had been retired the witness stated that, upon being pressed by him to tell how it happened, the deceased had finally said, "That's all right; Bill Harris [accused] is my friend, and I don't want nothing done to him;" and that he (the judge) "did not view this statement as a dying declaration, but just an expression of a desire on the part of the deceased that accused be not prosecuted, and for that reason ruled it out as inadmissible." "Indeed," the judge goes on to say, "the witness made clear the fact that the deceased refused to declare how the thing happened, and simply expressed a desire that nothing should be done to the accused, without giving a reason."

We find no error in this ruling. "Dying declarations are statements of material facts concerning the cause and circumstances of a homicide, made by the victim under a solemn conviction of impending death." A. & E. Ency. of Law (2d Ed.) vol. 10, p. 360. "The declarations of the deceased are admissible only as to those things to which

he would have been competent to testify if sworn as a witness." State v. Black, 42 La. Ann. 863, 8 South. 594; Rice on Evidence, vol. 3, p. 533; Bishop on Cr. Pr. vol. 1, art. 121; Underhill on Cr. Ev. p. 136, § 108.

"A dying declaration by the deceased to the effect that he did not wish the accused hurt for what he had done, and that accused had done nearly right," affords no evidence of anything more than a truly Christian spirit on the part of one who had been impliedly done to death, and who, in his dying agonies, was willing to forgive the malefactor. Adams v. People, 47 Ill. 380; and, to much the same effect, Kirby v. State, 89 Ala. 64, 8 South. 110, cited in A. & E. Ency. of Law (2d Ed.) vol. 10, p. 376, note.

Judgment affirmed.