Brent NISONGER, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4846.

Supreme Court of Wyoming.

June 29, 1978.

D. Gilbert Athay, Salt Lake City, Utah, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

Defendant-appellant was found guilty of murder in the second degree by the district court jury, as a violation of § 6–4–104, W.S.1977, and sentenced by the trial judge to life imprisonment in the Wyoming State Penitentiary. In seeking reversal of his conviction, defendant presents two issues for determination on appeal:

"1. The defendant's constitutional rights to be free from invasions of privacy and unreasonable searches and seizures, to be accorded due process of law and to be provided equal protection under the law were blatantly abridged and the Wyoming Code of Civil Procedure [sic] was emasculated when the trial court admitted into evidence a letter written by the defendant to his wife during his pretrial detention in the Sweetwater county jail.

"2. The verdict and judgment of conviction is contrary to law and should be set aside inasmuch as reasonable minds would find that the relevant evidence is insubstantial to prove that the defendant-

appellant committed the crime of second degree murder."

We shall affirm.

On November 18, 1976, the badly decomposed body of a human being, later identified by the Federal Bureau of Investigation as that of John Anthony Boggs, was found in the desert west of Green River, Wyoming. After local authorities had released the information concerning the identity of the body, the police in Salt Lake City, Utah, received an anonymous phone call implicating both the defendant as well as one John Scott Beverleigh in Boggs' death. Subsequently, in a statement given to the Salt Lake City police, Beverleigh identified the defendant as the one who had actually killed the deceased.

On the basis of Beverleigh's statement, the defendant was arrested and charged with murder in the first degree. Section 6–4–101, W.S.1977. At trial, Beverleigh testified that a day or so prior to Boggs' death, the defendant had told him, "We ought to take him [Boggs] out in the desert antelope hunting. There's a lot of money for us. Nobody will ever miss him," and that even prior to that conversation, the defendant had related to Beverleigh how he had always wanted to kill somebody, somebody nobody would miss. Beverleigh stated that on the day of the shooting all three men, the defendant, Beverleigh, and Boggs, the deceased, had gone into the desert to poach an antelope but when none could be found, their attention turned to hunting jackrabbits. It was, according to Beverleigh, while all three men were walking along a gully, that the defendant shot the deceased, first with a black powder cap and ball pistol, and then with a 9 mm. automatic pistol.

In addition to the testimony related by Beverleigh at trial, the State also established through expert testimony that the deceased had died as a result of either of two bullet wounds, one caused by a .38 caliber bullet fired from a 9 mm. automatic pistol; the other resulting from a bullet of unknown size or specification, identification being impossible because of the bullet's fragmented condition. In conjunction with this evidence, the State also introduced by photocopy a portion of a letter written and sent by defendant to his wife during his pretrial incarceration. It is upon the alleged improper admission of this letter that defendant raises his first assertion of error on appeal.

During the booking procedure at the Sweetwater county jail, wherein he was incarcerated pending trial, defendant signed a standardized consent form authorizing censorship of his incoming as well as outgoing mail.[1] Under the auspices of that consent, a letter written by defendant to his wife was photocopied by jail authorities before being mailed. At trial a portion of that letter in which defendant alludes to the destruction of a 9 mm. automatic pistol was offered and admitted into evidence,[2] the trial court overruling defendant's objections that not only did the letter violate the privilege of confidentiality between a husband and wife, but that the consent under which it had been seized was obtained through coercion and duress. These being the only grounds for objection specifically brought to the attention of the trial court, our review must be strictly limited thereto, notwithstanding the fact that constitutional objections have on appeal been raised. This court is not a proper forum in which to raise for the first time the question of the constitutionality of a statute or any constitutional question. There are few appellate rules more universally expressed and followed than that which recognizes that this court will not consider questions not presented to or raised in the trial court. *Apodaca v. State*, Wyo.1977, 571 P.2d 603, 605; *Zwick v. United Farm Agency, Inc.*,

---

1. "I do hereby consent to the Sheriff and the Deputies of Sweetwater County to censor all mail and packages sent or received by me while in the custody of said Sheriff.

"/s/ Brent Nisonger"

2. Excerpt from State's Exhibit No. 6:

" * * * The police told blab [Beverleigh] that they need the 9 mm. It would be a miracle if they ever found all the pieces and put them back together. ha ha. * * * "

Wyo.1976, 556 P.2d 508, 513; *Knudson v. Hilzer*, Wyo.1976, 551 P.2d 680, 686.

Turning then to the specific objections presented to the trial court, we find that neither are sufficient grounds to support a finding of reversible error. As for any coercion or duress, although one federal court has expressed its opinion that any consent given in exchange for "mail privileges" is inherently coercive,[3] such an opinion is a singular minority view which we at this time do not choose to adhere to, most particularly in this appeal wherein no evidence whatsoever was presented to the trial court to indicate that the consent requirement for mail privileges exceeded constitutional limits which allow restrictions for reasons of discipline and security. *Procunier v. Martinez*, 1974, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224.

■ Defendant asserts in that connection that the use against him of the incriminating contents of the censored letter constitutes an unlawful seizure and is inadmissible in evidence. The law is overwhelming against his position. Where the prisoner has himself composed a letter and released it, knowing that it would be read during routine censorship, he cannot complain that it is unfair. The State has lawfully come into possession of a voluntary statement. *Stroud v. United States*, 1919, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103, reh. den. 251 U.S. 380, 40 S.Ct. 176, 64 L.Ed. 317; *People v. Oliver*, 1975, 63 Mich.App. 509, 234 N.W.2d 679; *State v. McCoy*, 1974, 270 Or. 340, 527

P.2d 725; *State v. Johnson*, Mo.1970, 456 S.W.2d 1. Generally, see Annotation, 52 A.L.R.3d 548, entitled "Censorship and Evidentiary Use of Unconvicted Prisoners' Mail."

■ As for defendant's assertion that the introduction of the letter was in contravention of the marital privilege as encoded in § 1–12–104, W.S.1977,[4] we think a simple reading of the statute dispels any allegation of error. The evidence in question at trial was not presented by one spouse as a witness against the other, but rather was the product of the defendant himself. Extension of a privilege to such circumstances would clearly exceed the limits of that statutory doctrine.

■ Finally, by his second allegation of error, defendant has asserted that the evidence as presented in the trial court is insufficient on the whole to support his conviction. In considering such contention, we must keep in mind the specific question before us. It is not whether the evidence establishes guilt beyond a reasonable doubt for the members of this court, but rather whether the evidence of record is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. *Kahler v. Martin*, Wyo.1977, 570 P.2d 720; *State v. Clanton*, 1976, 219 Kan. 531, 548 P.2d 768; *Hendrix v. McKee*, 1978, 281 Or. 123, 575 P.2d 134; *Oberhansly v.*

---

**3.** See *Palmigiano v. Travisono*, D.R.I.1970, 317 F.Supp. 776, 792:

"I feel compelled to comment on the Fourth Amendment waiver signed by prisoners at the time of commitment. In exchange for mail 'privileges' ACI [Adult Correctional Institutions] officials require from each inmate his signature to a written statement authorizing them to censor his mail. It is this Court's view that such 'authorization' under the inherently coercive circumstances under which it is given is without effect and cannot operate as a waiver or consent under the Fourth Amendment to the opening and reading of all of his mail." (Bracketed material added.)

**4.** Section 1–12–104, W.S.1977, provides:

"No husband or wife shall be a witness against the other except in criminal proceed-

ings for a crime committed by one against the other, or in a civil action or proceeding by one against the other. They may in all civil and criminal cases be witnesses for each other the same as though the marital relation did not exist."

While not relevant in the case before us, as a matter of related interest, Rule 501, W.R.E., provides:

"Except as otherwise required by constitution or by these or other rules promulgated by the Supreme Court of Wyoming, the privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the State of Wyoming in the light of reason and experience."

*Earle,* Utah 1977, 572 P.2d 1384. Where, as here, there is a conflict in evidence, it is for the jury, not this appellate court, to judge and sort out that evidence, *Janski v. State,* Wyo.1975, 538 P.2d 271; *United States v. Spoonhunter,* C.A. 10, 1973, 476 F.2d 1050, and as long as there is any substantial evidence upon which a verdict can be based, it will remain undisturbed. *Murdock v. State,* Wyo.1960, 351 P.2d 674. When viewed in this light, we are satisfied the finding of guilt was justified. Although by no means exhaustive, we think these elements of evidence were important: (1) the testimony of Beverleigh that defendant shot the deceased and his alleged motives therefor; (2) the fact that the physical evidence corroborated Beverleigh's testimony; (3) the incriminating statement made by defendant in the letter to his wife.

Affirmed.

ROSE, J., filed a specially concurring opinion in which McCLINTOCK, J., joined.

ROSE, Justice, specially concurring, with whom McCLINTOCK, Justice, joins.

I concur in the result herein, but I disagree with the court's conclusion with respect to the voluntariness of the appellant's consent, authorizing censorship of his mail. Such an "authorization" is inherently coercive—since it evolves from a no-consent, no-mail situation—and, therefore, should not be considered as a waiver under the Fourth Amendment. *Palmigiano v. Travisono,* D.R.I., 317 F.Supp. 776.

This does not avoid the fact, however, that the defendant, nevertheless, voluntarily issued the letter—with knowledge of the mail-censorship probability. This would be sufficient, for me, to support admissibility of the letter in the absence of other coercive circumstances under *United States v. Baumgarten,* 8 Cir., 517 F.2d 1020. In other words, I would hold, as did the court in *Baumgarten,* supra, that the scanning of the defendant's letter was a valid "entry" (in the search and seizure context). The "plain-view" doctrine then comes into play to justify the admission of the part of the letter which was read to the jury.