Earl Allen BROWN, aka Earl Anderson Brown, Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 4866.

Supreme Court of Wyoming.

June 30, 1978.

James P. Castberg, Park County Public Defender, Powell, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Asst. Atty. Gen., and Rick Anderson and George L. Simonton, Deputy County Attys., Park County, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

Appellant was convicted of the crime of first degree rape [1] in the District Court of Park County, Wyoming. In pursuit of this appeal he raises three contentions which are substantially as follows:

That the court erred in its failure to provide appellant with a bill of particulars and to allow discovery and inspection as was ordered by the court.

That the evidence was insufficient to sustain the verdict.

That there was a failure to prove that the prosecutrix was placed in sufficient fear

---

1. Under § 6–63(A), W.S.1957, 1975 Cum.Supp.

to justify her lack of resistance or finding of lack of consent.

■ Appellant filed a motion for bill of particulars and for discovery and inspection on April 20, 1977, and the court made an order on April 25 requiring that a bill of particulars be filed, and for discovery and inspection pursuant to Rules 9(d) and 18, W.R.Cr.P. Nothing further appears in the record showing any compliance with this order. Appellant, however, apparently never did call this omission to the trial court's attention, nor did he object to going to trial because of the failure to comply with this order. In an apparent effort to escape the consequences of this failure he now asserts that this was plain error under Rule 49(b), W.R.Cr.P. To bolster this claim of error he asserts that this failure allowed the introduction of evidence which is immaterial and served only to inflame the passion and prejudice of the jury; that it raised questions of the defendant's use of drugs; and alleges that the allusion to drug use, although objections were sustained, was highly prejudicial. He also complains of photographs of sexual material, immaterial to the issues and to which objection was sustained, and that this was wrongful introduction of an inflammatory subject. Appellant nowhere indicates to this court or to the trial court that he did not know or was not fully informed of the crime with which he was charged, nor does he assert he was surprised. Inasmuch as we have heretofore observed that a bill of particulars "is designed to make more specific the general allegations in the information to enable the defendant to prepare his defense and avoid being surprised at the trial," *Booth v. State*, Wyo., 517 P.2d 1034, 1036, it is apparent that absent such surprise or claim that no prejudicial error was committed. Further, this contention was not called to the attention of the trial court and will not be considered, *Hampton v. State*, Wyo., 558 P.2d 504, 507–508, and cases cited.

■ In connection with the failure to discover and the right to inspect, the appellant contents himself with this statement:

"The appellee failed to comply with the court's order and the appellant was therefore unable to totally avoid the references to drug abuse and pornography by appellee's witnesses."

In considering this claim of error, disposal might be made on the foregoing grounds. However, because appellant does make an argument or attempt to demonstrate prejudice and plain error, we will consider this matter. Appellant, in asserting such claim, assumes a definite burden of demonstrating among other things that a substantial right has been adversely affected, and failing in which we will not entertain such claim, *Daellenbach v. State*, Wyo., 562 P.2d 679, 681; *Hampton v. State*, supra. Appellant's position in this area hangs upon a tenuous thread. Although he argues that immaterial and prejudicial evidence was introduced which inflamed the passion and prejudice of the jury, it is notable that all objections were sustained thereto. The brief of appellant further does not allege or make any statement or assertion that defendant did not know of these photographs or the matters of the drugs about which complaint was made—the drugs having been taken, by the way, from the billfold of defendant at the time of his arrest, and the film from the camera.

The questioning which appellant now alleges was prejudicial is contained in the testimony of Edward R. McAuslin, an investigator with the Riverton Police Department, that at the time of the arrest there was found among appellant's possessions a package of amphetamines. No objection or motion to strike this testimony was made. The only objection made to a following question was aimed at the witness's identification of these as being based upon the analysis by Jim Bonnel and that it was hearsay. Appellant did move and ask that this evidence be stricken and that the jury be advised to disregard it because the opinion was based upon hearsay. The court sustained this motion and directed the jury to disregard this testimony. No further motion was made with regard to the preceding testimony, nor was a mistrial requested. We must assume that in absence

of further objection this admonition satisfied counsel, *Oldham v. State*, Wyo., 534 P.2d 107, 111. Defendant's counsel further cross-examined him upon this matter and if there was error, exacerbated it. On redirect examination McAuslin was examined about a camera he had taken into possession at the time of the arrest. Objection was made and overruled that this was without the scope of redirect. McAuslin then testified that a roll of film in the camera was developed and the question was then posed if any picture had anything to do with "the subject of sex." An objection was immediately made and sustained thereto, and it stopped at this juncture. The record does not show that these pictures were ever seen by the jury or any other reference made thereto, and no objection based thereon or claim of prejudice was made by way of motion at that time, so that the court would have had no opportunity to rule and it cannot be raised, *Hampton v. State*, supra; *Connor v. State*, Wyo., 537 P.2d 715, 717.

## SUFFICIENCY OF THE EVIDENCE

The second and third contentions of the appellant are so interrelated—and their relationship is evident from their statement—that they must be considered jointly.

Both in his brief and oral argument, appellant's counsel argues at length and sets out at least 11 alleged inconsistencies in prosecutrix's testimony and urges upon this court that there was not sufficient evidence to sustain the conviction. We view this as a most splendid argument to be directed to the fact finder inasmuch as it is entirely an attack upon the credibility of the complaining witness.

We have long recognized that the uncorroborated testimony of the prosecutrix will sustain a conviction of rape, *Strand v. State*, 36 Wyo. 78, 252 P. 1030, 1031; *Tway v. State*, 7 Wyo. 74, 50 P. 188, 189. As in other criminal cases, the credibility and weight of the testimony of the prosecutrix in a rape case is for the determination of the jury, as was clearly expressed in *Blackburn v. State*, Wyo., 357 P.2d 174, 180:

"* * * The credibility of the complaining witness was for the jury to determine."

Particularly this determination is not for this court, but for the jury, *Martinez v. State*, Wyo., 511 P.2d 105, 109; and the jury having resolved the conflicting testimony, this court cannot interfere even if we were to think the resolution improper, *Fresquez v. State*, Wyo., 492 P.2d 197, 202.

Appellant correctly sets out what we deem to be the sole issue herein as follows:

"Whether this act was consummated 'forcibly and without her consent.'"

A summarization of the evidence so far as necessary and applicable to the question raised must be made within the parameters of a rule oft recognized by this court. We accept the evidence of the prosecution as true and omit consideration of the evidence of the unsuccessful party which may be in conflict therewith, and further we must indulge every favorable inference which may be drawn therefrom, *Evanson v. State*, Wyo., 546 P.2d 412, 418; *Harris v. State*, Wyo., 487 P.2d 800, 801. The posture of this case makes it unnecessary to consider any evidence except that directly involved in the proof of non-consent and acquiescence on the part of the prosecutrix.

There is no dispute that these parties had sexual intercourse in Cody on the night of September 25, 1976. Defendant insists it was a joint venture of willing and consenting adults. Prosecutrix's version, which the jury accepted, is a story of a sexual encounter forced upon her against her will and without her consent. Appellant and prosecutrix were employed in Cody by Harry Jackson. On the evening of this date these parties went to dinner at a place described as King's Castle upon the invitation of defendant. After a pleasant dinner and upon their departure, prosecutrix asked defendant to take her to her car, which was parked upon the street in Cody. When she made this request he told her they were going to Harry's for awhile. After they got in the car she advised him she could not stay long. Defendant then reached over and grabbed her arm, applying pressure,

and pulled her over toward him. She said this move engendered some suspicion. He did not talk to her but just kept driving. Defendant parked the car in front of Harry's for awhile, keeping a grip upon her, and pulled her from the car upon his side. She told him she had to get home because Rick Caufmann, with whom she lived, would be there. He made no response but jerked her around even more. They walked to the door and into the house. When they got inside he shut the door and grabbed her with both arms and pushed her backwards into one of the bedrooms. She mentioned Rick's name several times and he got much rougher. When she came to a point where her back was to the edge of the bed he started tearing at her clothes with one hand while holding her with the other. She tried to move his hands but didn't get anywhere. He was also pulling at her pantyhose and underwear. She asked him to stop but he did not. She says she does not have any idea or memory of how he got off her dress and shoes but that she was completely undressed when she was pushed onto the bed; that he had his hands upon her shoulders holding her down and she had her knees together and was lying sideways with the bottom part of her body. She first testified that she did not know how he opened her knees but later testified that he pushed them apart with his knees, and that it hurt when he inserted his penis. She says that she did not scratch, bite or kick him, because she was scared both for her life and that for the baby she was carrying. She was apparently between three to four months pregnant, which fact was admittedly known to defendant. She testified that she had been beaten before, and that she was afraid of him; that her struggles were not doing any good; that she had seen a t.v. program on the subject of rape and although there was some advice to fight, she said some say "let them have what they want." During the first intercourse she was allowed to go to the bathroom and within 30 seconds defendant came in and pulled her back to the bed. He resumed having intercourse and after some considerable period got off and rolled over toward the wall. She got up, quietly put on her clothes and went to the phone in the kitchen which adjoined. She called the home of her friend, Joyce Reiter, but she doesn't think "she got anything out on the first call." She then called the second time, and Kenny (Joyce's husband) answered. She thinks she did talk to Joyce and asked her to pick her up in the park. When she got out of the house she noticed the rip in her dress and her pantyhose. She stayed in the park some five minutes. When Joyce picked her up and when she got in the car she told Joyce she had been raped by defendant. Joyce testified when she picked her up she was shaking and was crying like she was hysterical and seemed out of control. They then drove to prosecutrix's home where they picked up Rick, and they went to the Cody hospital. Patricia Briggs, a nurse on duty, saw her and described her as "very upset and crying," describing her as "at the edge of control." There was only a doctor on call there and when she told the nurse she was pregnant she was advised to go to Powell and see Dr. Christensen, who was handling her pregnancy. He discovered a bruise on the calf of her right leg and a scrape or scratch upon her left knee. Her wrists hurt but there were no observable bruises at that time. He noticed her dress had a tear on the right side and there was a tear in her pantyhose on the same side. He found no evidence of any vaginal tear or bruising, but in talking to her and examining her found her "very emotionally upset and very distraught, being embarrassed, uncomfortable, and unhappy."

It will be noticed that the testimony of the prosecutrix is not uncorroborated. The tears in the dress and pantyhose, the bruise upon her right leg, and scratch upon her knee, and the extremely disturbed condition of prosecutrix when picked up by her friend, and as noticed by the nurse in Cody and the doctor in Powell, cannot be ignored.

Additionally, there is the matter of her more or less spontaneous complaint upon her first opportunity, which fortifies her credibility and reflects the condition of outrage and shock. Although we have held

that an immediate complaint does not corroborate the facts of the rape, and have noted that the evidence may be considered in connection with the consistency and credibility of the prosecutrix, *State v. Mau*, 41 Wyo. 365, 285 P. 992, 997,[2] and *State v. Hines*, 79 Wyo. 65, 331 P.2d 605, 609, certiorari denied 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261, this court did approve an instruction which advised the jury that they were entitled to consider such evidence in determining her credibility, so that in this case this is mentioned because the attack is leveled solely at her credibility.

 There is a difference between submission and consent, and submission does not necessarily involve consent. Acquiescence is not consent if induced by fear or reasonable apprehension of bodily harm, *Tryon v. State*, Wyo., 567 P.2d 290, 292–293; *Gonzales v. State*, Wyo., 516 P.2d 592, 594–595; and the reasonableness of the fear or apprehension rests with the fact finder. Resistance or consent in a rape case is a jury question, *Tryon v. State*, supra, 567 P.2d at 292; *Kennedy v. State*, Wyo., 470 P.2d 372, 373, rehearing denied 474 P.2d 127, certiorari denied 401 U.S. 939, 91 S.Ct. 933, 28 L.Ed.2d 218. Based upon the evidence, the jury in this case has resolved the question of consent adversely to this appellant.

The judgment is therefore affirmed.

ther *Mau* nor *State v. Holm*, 67 Wyo. 360, 224 P.2d 500, dealt with this exception. For discussion of the rather confusing status and reasons for admission of such evidence see IV Wigmore on Evidence, §§ 1143–1144, pp. 297–314 (Chadbourn Rev.).