**Randy Lynn HARVEY, Appellant
(Defendant below),**

v.

**The STATE of Wyoming, Appellee
(Plaintiff below).**

No. 5053.

Supreme Court of Wyoming.

July 2, 1979.

T. Michael Golden, of MacPherson, Golden & Brown, Rawlins, signed the brief and appeared in oral argument for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Sharon A. Fitzgerald, Legal Intern, signed the brief, and Sharon A. Fitzgerald appeared in oral argument for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice, delivered the opinion of the court.

Appellant-defendant was found guilty, after a jury trial, of the crime of negligent

homicide (§ 31–5–1115, W.S.1977). He appeals (1) on the ground that the evidence was not sufficient to sustain the verdict, and (2) on alleged error in admission into evidence of testimony by an ambulance attendant of a statement made to him by defendant's wife relative to an attempt by defendant to drive his motorcycle between two other motorcycles at a speed of about 90 miles per hour. We affirm.

## SUFFICIENCY OF THE EVIDENCE

The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. *Evanson v. State,* Wyo., 546 P.2d 412 (1976); *Brown v. State,* Wyo., 581 P.2d 189 (1978); *Nisonger v. State,* Wyo., 581 P.2d 1094 (1978).

The elements which must be established beyond a reasonable doubt for conviction of the crime of negligent homicide are: (1) the death of a person; (2) within a year of the occurrence; (3) as a proximate result of an injury received in the occurrence; and (4) the occurrence was a result of defendant's driving of a vehicle in reckless disregard of the safety of others.[1] Defendant did not controvert the establishment by the prosecution of the first three of these elements, but he does contend that there was not substantial evidence to support a finding by the jury that, beyond a reasonable doubt, he was driving in reckless disregard for the safety of others. A review of the record does not support defendant in this contention.

Evidence of the following is not contested by defendant: On May 20, 1978, at the time of the occurrence, seven people were traveling together on motorcycles on a two-lane highway between Hanna and Medicine Bow. Defendant was operating one motorcycle, with his wife, Susan, as a passenger. Jack Vaughn was operating a second motorcycle, with the deceased as a passenger. Patrick Apodaca was operating a third motorcycle, with Roxene Ventling as a passenger. Kevin DeWitt was operating a fourth motorcycle without a passenger. The Vaughn and Apodaca motorcycles were proceeding abreast in the right lane, with the Vaughn motorcycle on the right and slightly ahead of the Apodaca motorcycle.

There is substantial evidence in the record that the front of defendant's motorcycle hit the rear of the Vaughn motorcycle[2]; that the impact occurred when defendant was overtaking and attempting to pass the Vaughn and Apodaca motorcycles by going between them[3], thus attempting to pass the Vaughn vehicle on the right side[4]; that

1. Section 31–5–1115(a), W.S.1977 provides:

   "(a) When the death of any person ensues within one (1) year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

2. Section 31–5–210(a), W.S.1977 provides:

   "(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

3. Section 31–5–116(g), W.S.1977 provides:

   "(g) No person shall operate a motorcycle between lanes of traffic, or between adjacent lines or rows of vehicles."

   Section 31–5–116(j), W.S.1977 provides:

   "(j) Motorcycles shall not be operated more than two (2) abreast in a single lane."

4. Section 31–5–203(a)(i), W.S.1977 provides:

   "(i) The driver of a vehicle overtaking another vehicle proceeding in the same direction

defendant did not go into the left lane in attempting to pass the Vaughn and Apodaca motorcycles as they were proceeding abreast in the right lane [5]; and that defendant was exceeding the speed limit at the time of the accident.[6]

Some of the evidence favorable to the prosecution relative to the foregoing is summarized as follows:

Highway Patrolman Coleman introduced photographs which depicted damage to the front of defendant's motorcycle and a bent fork over the front wheel. They depicted damage to the rear and right rear of the Vaughn motorcycle. He testified to observing such damage, and that the speed limit at the place of the accident was 55 miles per hour. He testified that the accident resulted in an 11-foot-6-inch skid mark which began 7 feet from the center line to the south (in the lane in which the motorcycles were traveling east) on a 29-foot wide roadway. This skid mark was followed by a 9-foot space without skid marks, then the set of skid marks and scrape marks which were made by the Vaughn motorcycle angled to the left a distance of about 227 feet to a point in the left lane, and the set of skid marks and scrape marks which were made by defendant's motorcycle angled to the right a distance of about 105 feet, leaving the roadway after 60 feet and ending about 12 feet off the roadway. He testified that after defendant's arrest on June 12, 1978, and after defendant was advised relative to his rights concerning the making of

a statement, defendant said, "[t]he accident would never have happened if Mr. Vaughn hadn't moved over in front of me, because I was going to pass him on the right."

Patrick L. Apodaca testified that his motorcycle would operate only in third gear with a top speed of 40 miles per hour; and that he was riding almost abreast the Vaughn motorcycle at that speed at the time of the accident. He said both the Vaughn motorcycle and his motorcycle were in the right lane. He stated that defendant would "speed up, back and forth, slowing down and speeding up again," riding ahead of them and then behind them "quite often." He testified that he saw defendant's motorcycle come up from the rear and run into the back of the Vaughn motorcycle. He estimated the speed of defendant's motorcycle at that time to be 80 miles per hour. He further testified that subsequent to the accident, defendant told him "I was doing 80 miles an hour, but if Jack wouldn't have moved I wouldn't have run into him."

Roxene Ventling testified that she was riding as a passenger on the Apodaca motorcycle at the time of the accident; that the Apodaca and Vaughn motorcycles had been traveling side by side in the right lane and at the time of the impact the back tire of the Vaughn motorcycle was "probably a little bit ahead of our front tire." She testified that the defendant's motorcycle hit the Vaughn motorcycle "from behind," and, in her opinion, the defendant's motorcycle was traveling "between 75 and 80 miles an

shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle."

None of the statutory exceptions to this direction, e. g., when the overtaken vehicle is making or about to make a left turn, etc., apply to this case.

5. Section 31–5–116(f), W.S.1977 provides:

"(f) The operator of a motorcycle shall not overtake and pass any vehicle except a *single* motorcycle in the same lane occupied by the vehicle being overtaken." (Emphasis added.)

6. Section 31–5–301, W.S.1977 provides:

"(a) No person shall drive a vehicle on a highway at a *speed greater than is reasona-*

ble and prudent under the conditions and having regard to the actual and potential hazards then existing.

"(b) Except when a special hazard exists that requires lower speed for compliance with paragraph (a) of this section, the limits specified in this section * * * shall be maximum lawful speeds, and no person shall drive a vehicle on the highway at a speed in excess of such maximum limits:

*   *   *   *   *   *

"(iii) Fifty-five (55) miles per hour in other locations."

The other locations referred to are other than at schools and in urban districts.

hour" at that time. She stated that defendant "and Kevin both, they just wouldn't stay in one place. They would be ahead of us, and they would be behind us, or they would be here and there. * * * "

The foregoing evidence is sufficient for a jury to form a basis for a reasonable inference that the questioned element of the crime existed beyond a reasonable doubt. They could form a basis therefrom that defendant was driving his motorcycle in reckless disregard of the safety of others, i. e., that he was driving in a manner that he knew, or should have known, was highly dangerous to others, and that he did so intentionally, or heedlessly, with a careless indifference to the consequences.

In *State v. Rideout,* Wyo., 450 P.2d 452, 453, 454 (1969), this court approved the following definitions of the term "reckless disregard of the safety of others":

" 'The term "reckless disregard of the safety of others" of course implies a much greater dereliction in hazarding the safety of others than ordinary negligence. However, it does not require any intent to do harm either generally, or to the victim in particular. What is essential is that it be shown beyond a reasonable doubt that the defendant drove in a manner that he knew, or should have known, was highly dangerous to others, and that he did so intentionally, or heedlessly, with a careless indifference to the consequences. This court has said that the "doing of an act fraught with the potentiality of producing death amounts to such a reckless disregard for the safety of others" that it will justify a conviction of this crime.

\* \* \* \* \* \*

" 'The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' "

The second definition furnished by the court is quoted from § 500, 2 A.L.I. Restatement, Torts 2d (1965).

Since the jury could reasonably find from the foregoing summary of the evidence favorable to the prosecution that defendant was driving his motorcycle in reckless disregard of the safety of others, there was sufficient evidence to sustain the verdict.

## ADMISSION OF STATEMENT OF AMBULANCE ATTENDANT

█ Defendant contends that reversible error occurred during the trial through admission into evidence of the following testimony by the ambulance attendant concerning a statement made to him by the wife of the defendant while enroute from the scene of the accident to the hospital:

"Q. And what did she tell you?

"A. Well, she said there was [sic] two motorcycles riding abreast, and they went to go in between them, and they bumped.

"Q. Did she tell you anything else?

"A. I asked her how fast they were going, and she said about 90. * * * "

We need not address the substance of defendant's contention inasmuch as the admission of such testimony was not prejudicial even if improperly admitted. The questioned testimony had to do with the fact that defendant tried to go between two other motorcycles and that he was traveling in excess of the speed limit. The foregoing summaries of portions of the testimony of Patrolman Coleman, Apodaca, and Ventling are to the same effect. The physical evidence and defendant's statement to the highway patrolman and to Apodaca were to the effect that defendant was attempting to drive between the other two motorcycles. Apodaca testified that defendant told him

he was traveling at a speed of 80 miles per hour. Apodaca estimated that speed at 80 miles per hour and Ventling estimated it at 75 to 80 miles per hour. The testimony of the ambulance attendant was repetitive and cumulative to this other testimony. The speed limit was 55 miles per hour.

In addition to the foregoing summary of the evidence and the testimony of the ambulance attendant, the only other evidence was testimony by prosecution witnesses Vaughn and Klahs, and by defense witnesses Susan Harvey (defendant's wife) and DeWitt. Vaughn did not testify concerning the accident itself, but only as to the damage to the motorcycles. Klahs testified that he was a friend of the defendant and that defendant told him, during a conversation three or four weeks after the accident, that he was traveling 60 miles per hour and had just looked at his speedometer before the accident. Klahs testified that he saw the accident from the rear at a distance and that defendant's motorcycle was on the right of Vaughn's motorcycle at the time of the accident, with Vaughn's vehicle swerving about a foot just before impact. He did not testify as to his opinion of the speed of defendant's motorcycle. Susan Harvey testified that her head was behind the defendant's back, and she did not testify as to speed or position of the motorcycles. She said that the information given by her to the ambulance attendant was information previously told to her by Apodaca and was not that of her own knowledge.

Thus, not only the evidence favorable to the prosecution (which was sufficient to sustain the verdict), but the evidence taken as a whole, is substantial and convincing of guilt. Without the testimony of the ambulance attendant, a different verdict would not have resulted. In other words, the prosecution's case would not have been significantly less persuasive had the ambulance attendant's testimony been excluded. There was substantial and convincing evidence of guilt, and the error, if one, was not likely to have changed the verdict. Under such circumstances, the error, if one, is not prejudicial. *Reeder v. State,* Wyo., 515 P.2d 969 (1973); *Pack v. State,* Wyo., 571 P.2d 241 (1977); *Hampton v. State,* Wyo., 558 P.2d 504 (1977); *Madrid v. State,* Wyo., 592 P.2d 709 (1979); *State v. Campbell,* 42 Wyo. 252, 293 P. 365 (1930); *Hollywood v. State,* 19 Wyo. 493, 120 P. 471 (1912), reh. den. 19 Wyo. 493, 122 P. 588; *Espy v. State,* 54 Wyo. 291, 92 P.2d 549 (1939); *Jenkins v. State,* 22 Wyo. 34, 134 P. 260 (1913), reh. den. 22 Wyo. 34, 135 P. 749; *Murdock v. State,* Wyo., 351 P.2d 674 (1960); *Eagan v. State,* 58 Wyo. 167, 128 P.2d 215 (1942).

Affirmed.

McCLINTOCK, Justice, specially concurring, with whom ROSE, Justice, joins.

I concur with the majority that the evidence was sufficient to sustain the verdict of guilty. While I am of the further opinion that the testimony of the ambulance attendant concerning the statement made to him by appellant's wife was hearsay of the rankest sort and should not have been admitted, I am also willing to agree that it was not prejudicial. However, I am uncertain of the overall tenor of the majority opinion and wonder if it disposes of the question merely because there was sufficient evidence to sustain the decision. I do not want to be considered as retreating from the position expressed in my dissent in *Campbell v. State,* Wyo., 589 P.2d 358, 373 (1979):

> "The question is not whether the jury has made a sustainable choice but whether the process of making that choice has or could have been affected by improper evidence or some other irregularity in the proceedings."

I shall not dwell at length upon my reasons for the distinction since I have said about everything I could in that opinion. However, I would again quote from *State v. Martin,* 73 Wash.2d 616, 440 P.2d 429, 437, reh. den., cert. den. 393 U.S. 1081, 89 S.Ct. 855, 21 L.Ed.2d 773 (1968):

"* *¹* When the appellate court is unable to say from the record before it whether the defendant would or would not have been convicted but for the error committed in the trial court, then the error may not be deemed harmless, and the defendant's right to a fair trial requires that the verdict be set aside and that he be granted a new trial."

In this case, the majority state that there was "substantial and convincing evidence of guilt, and the error, if one, *was not likely to have changed the verdict.*" This is not enough for me, but I believe that we can properly say with complete conviction that the defendant would have been convicted on the evidence, absent the wife's statement. The conviction should therefore be affirmed.