**Edwin Earl BROOM, also known as Eddie Opendack, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 84–33.**

Supreme Court of Wyoming.

Feb. 22, 1985.

Rehearing Denied March 26, 1985.

Leonard D. Munker, State Public Defender, Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program, Martin J. McClain, Asst. Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Marion Yoder, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant appeals from the judgment and sentence of the court rendered on a jury verdict which found appellant guilty of obtaining possession of a controlled substance by fraud in violation of § 35–7–1033(a)(iii), W.S.1977.[1] On appeal, appellant contends that there was insufficient evidence to support the jury verdict, and that the trial court erred in not permitting testimony relative to an opinion of a handwriting expert.

We affirm.

I

In determining whether or not there was sufficient evidence to support a jury verdict, we are not to reweigh the evidence. The following standard under which we examine the evidence for sufficiency to support a verdict was set forth in *Harvey v. State*, Wyo., 596 P.2d 1386, 1387 (1979):

"The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in

---

1. Section 35–7–1033(a)(iii) provides:
   "(a) It is unlawful for any person knowingly or intentionally:
   * * * * * *
   "(iii) To acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge."

conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. *Evanson v. State*, Wyo., 546 P.2d 412 (1976); *Brown v. State*, Wyo., 581 P.2d 189 (1978); *Nisonger v. State*, Wyo., 581 P.2d 1094 (1978)."

■ Applying the standard, we find the evidence sufficient *"to form the basis for a reasonable inference* of guilt beyond a reasonable doubt" (emphasis added), *Harvey v. State*, supra, 596 P.2d at 1387. See also *Mirich v. State*, Wyo., 593 P.2d 590, 591 (1979).

■ The standard requires us to "leave out of consideration entirely the evidence of the defendant in conflict" with the evidence of the prosecution, which evidence of the prosecution we must "accept as true" and give "every favorable inference which may reasonably and fairly be drawn therefrom." *Harvey v. State*, supra, 596 P.2d at 1387.

■ It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence. *Russell v. State*, Wyo., 583 P.2d 690, 694 (1978); *Janski v. State*, Wyo., 538 P.2d 271, 277 (1975); *Reeder v. State*, Wyo., 515 P.2d 969, 971 (1973). The factfinder—in this case, a jury—did that. The jury is entitled to weigh and disregard the evidence intended to discredit the witnesses for the State. *Russell v. State*, supra, 583 P.2d at 694, citing *Curley v. United States*, 81 U.S.App. D.C. 389, 392, 160 F.2d 229, 232–233, cert. denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed.

1850, reh. denied 331 U.S. 869, 67 S.Ct. 1729, 91 L.Ed. 1872 (1947). Certainly the jury is not obligated to believe the defendant's witnesses. *Russell v. State*, supra, 583 P.2d at 699, citing *Newell v. State*, Wyo., 548 P.2d 8 (1976).

■ There is an extra and very important requirement in the standard by which we determine if the conviction should be sustained. We are to determine whether the record evidence *could reasonably support* the finding of guilt beyond a reasonable doubt. Not whether or not the evidence was sufficient to establish guilt beyond a reasonable doubt, but whether or not the evidence could reasonably support such a finding by the factfinder.

This distinction was nicely noted in *Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788, 2789, 61 L.Ed.2d 560, reh. denied 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979):

" * * * [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS*, 385 U.S. [276], at 282, 87 S.Ct. [483], at 486 [17 L.Ed.2d 362] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* See *Johnson v. Louisiana*, 406 U.S. [356], at 362, 92 S.Ct. [1620], at 1624–1625 [32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent neces-

sary to guarantee the fundamental protection of due process of law." (Footnotes omitted and emphasis added.)

In this case, the evidence favorable to the prosecution consisted of testimony that appellant, under the name of Eddie Opendack, obtained a prescription from Dr. Stephenson for Preludin. The drug is a Schedule II drug and it comes in three strengths: 25, 50 and 75 milligrams. The prescription form furnished to appellant did not reflect the strength. Appellant presented the prescription form to one pharmacist, who noted that it did not indicate a strength, and since he was in a hurry, he "didn't want to mess with calling Dr. Stephenson to find out." He told appellant he did not carry the drug. When shown the prescription form introduced into evidence, he said that the "75" written on it did not look as if it was written by Dr. Stephenson, but that the rest of the prescription was in the handwriting of Dr. Stephenson. He had filled prescriptions from forms written by Dr. Stephenson for five and one-half years and was familiar with his handwriting. The pharmacist who filled the prescription for appellant said that the "75" was on the prescription form when it was presented to him. He was able to recall appellant as the one for whom the prescription was filled because appellant had been with a Georgia Opendack a week previous when she had a similar prescription filled. On the earlier occasion, the pharmacist had called Dr. Stephenson to determine if the strength "25 milligrams" written on the prescription was proper inasmuch as Georgia Opendack said that the 25-milligram tablets did not resemble the ones she had been taking. Dr. Stephenson then authorized the 75-milligram tablets and the authorized change was noted on the back of the prescription form. This earlier incident caused the pharmacist to recollect the incident subject of the charge in this case and the fact that the form contained the numerals "75." Dr. Stephenson and the second pharmacist had a discussion about the prescription shortly after it was filled. At the trial, both testified that at the discussion the doctor said he had not written the "75" on the prescription form. Specifically, the doctor testified:

" * * * [I]t was my opinion at that time and it is now that I had not put the '75' on the prescription."

The fact that the name on the prescription form was not appellant's true name is not significant. Many times, prescription forms are presented by one person on behalf of another for whom the prescription was made. There is no controversy here but that the prescription was made for appellant under whatever name.

However, the obvious inference to be drawn from the evidence is that the prescription form was altered by adding the numerals "75" between the time it was presented by appellant to the first pharmacist and the time it was presented by him to the second pharmacist. The jury also could infer that the appellant knew this, but even so used the prescription to obtain Preludin 75. This was a reasonable inference that the jury was entitled to draw from the evidence before it. *Murray v. State*, Wyo., 671 P.2d 320, 328 (1983); *Russell v. State*, supra, 583 P.2d at 694–700. The availability of these inferences is sufficient to find the appellant guilty beyond a reasonable doubt.

Again, it is not our task to reweigh the evidence or re-examine the credibility of the witnesses. There was evidence which *could reasonably support* the jury finding of guilt beyond a reasonable doubt. The fact that such evidence is circumstantial is immaterial. Logically connected circumstances may be as cogent proof of existence of fact as direct evidence and may even outweigh opposing direct evidence. *Tisthammer v. Union Pacific Railroad Co.*, 41 Wyo. 382, 392, 286 P. 377, 380 (1930). Circumstantial evidence, with proper inferences to be drawn therefrom, may be sufficient to establish fraud. *United States v. Mammoth Oil Co.*, 14 F.2d 705, 717 (8th Cir.1926), affirmed 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137 (1927).

There was sufficient evidence to form a basis for a reasonable inference of guilt beyond a reasonable doubt.

## II

Appellant's wife was asked to testify to the opinion reached by a handwriting expert who had examined the prescription form. The expert witness was not available to testify. The court sustained the objection to such testimony as hearsay. The proposed evidence was obviously hearsay and appellant so acknowledged at the bench conference. Additionally, it was noted at the bench conference that the expert would testify that the handwriting on the prescription form was written by Dr. Stephenson, but that he had no opinion as to the numbers. The appellant apparently acquiesced in this characterization of the testimony of the expert, and did not make any offer of proof, let alone an offer to the contrary.

The only part of the prescription form in contest was that having to do with the numbers. If the hearsay testimony were admitted, it would not have been pertinent to the factual issue involved. There was no disagreement about Dr. Stephenson's having written the rest of the prescription.

Additionally, appellant did not make an offer of proof. Thus, there would be no basis for a review by us of the ruling. *Garcia v. State*, Wyo., 667 P.2d 1148, 1155 (1983).

It may seem a harsh result to treat the use of a prescription with "75 mg." unlawfully added to an otherwise lawful prescription in the same way as the use of a completely forged prescription is treated. Nevertheless the legislature has provided for this result, and that is for the legislature, not the court, to decide. As the statute is written, it makes no fine distinctions but condemns the use of any prescription which has been tampered with in any way.

Affirmed.

ROSE, Justice, dissenting.

The principal argument in this appeal concerns the sufficiency of the evidence to sustain the jury verdict finding appellant guilty of obtaining possession of a controlled substance by fraud, in violation of § 35-7-1033(a)(iii), W.S.1977. Contrary to the holding of the majority, I would conclude that the evidence, when viewed in a light most favorable to the prosecution, is insufficient to support appellant's conviction. I would, therefore, have reversed the judgment entered in this case by the district court.

## COURSE OF PROCEEDINGS

As the majority observe, appellant Edwin Earl Broom was charged with obtaining possession of a controlled substance, "Preludin 75," by misrepresentation, fraud, forgery, deception, or subterfuge, in violation of § 35-7-1033(a)(iii), W.S.1977. That statute provides:

"(a) It is unlawful for any person knowingly or intentionally:

\*  \*  \*  \*  \*  \*

"(iii) To acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge."

In the trial of the matter, the court instructed the jury concerning the elements of the charged offense and the definition of a fraudulent act:

## "INSTRUCTION NO. 2

"The defendant is charged with the crime of acquiring or obtaining possession of a controlled substance by fraud. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. That the defendant, Edwin Earl Broom, knowingly or intentionally acquired or obtained possession of Preludin # 75.

"2. That the Preludin # 75 was obtained by fraud.

"3. That the incident occurred on the 20th day of January, 1983, in Weston County, Wyoming."

"INSTRUCTION NO. 7

"To act fraudulently or with intent to defraud means to act willfully and deliberately and with the specific intent to deceive or cheat."

At the close of the State's case in chief, and again following the presentation of all of the evidence, counsel for appellant moved for judgment of acquittal, on the ground that the State had failed to establish any misrepresentation or fraudulent conduct. The trial court denied these motions and submitted the case to the jury. Appellant was found guilty as charged and sentenced to two to five years in the state penitentiary, fined $3,000, and ordered to pay $1,000 in restitution to the County of Weston and the State of Wyoming for attorneys' fees. The court suspended all but five months of the sentence of incarceration and placed appellant on probation for four and one-half years.

Appellant perfected his appeal to this court and frames the issue as follows:
"1. Whether there exists insufficient evidence in the record to sustain the jury verdict finding Appellant guilty of obtaining possession of a controlled substance by fraud."

## SUFFICIENCY OF THE EVIDENCE

We recently repeated the standard under which we examine the evidence for sufficiency to support a verdict in *Young v. State*, Wyo., 678 P.2d 880, 882 (1984):
" 'The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. *Evanson v. State*, Wyo., 546 P.2d 412 (1976); *Brown v. State*, Wyo., 581 P.2d 189 (1978); *Nisonger v. State*, Wyo., 581 P.2d 1094 (1978).' " Quoting from *Harvey v. State*, Wyo., 596 P.2d 1386, 1387 (1979).

See also *Russell v. State*, Wyo., 583 P.2d 690 (1978). With this standard in mind, I examine the record to determine whether the evidence supports an inference of wrongful procurement of Preludin, 75 milligrams, beyond a reasonable doubt.

The State presented five witnesses in establishing its case against appellant. The inspector for the Wyoming State Board of Pharmacy testified that Preludin is a controlled substance under state statutes, that it is a stimulant primarily prescribed to curb the appetite, and that Preludin tablets exist in strengths of 25, 50, and 75 milligrams.

Dr. Henry Stephenson identified State's Exhibit No. 1 as the prescription for Preludin which he had written for appellant using the name "Eddie Opendack." He testified that he had obtained that name from appellant's chart prepared by his office staff. He further testified that appellant's wife, Georgia Opendack, had contacted him previously and had supplied the family medical record which his staff may have used in preparing appellant's chart.

State's Exhibit No. 1 bears the notation "75 mg," but Dr. Stephenson testified on direct examination that he failed to specify a strength when prescribing Preludin for appellant:
"Q Did you give that prescription to a person you thought was Eddie Opendack?

"A I did.

"Q At the time you give [sic] it to the patient was there a strength, 75, written on the prescription?

"A There was not.

"Q Why wasn't there a strength on the prescription?

"A I hadn't put one on there.

"Q  Why didn't you put one on there? Is there a reason?

"A  I suppose I neglected to."

On cross-examination, Dr. Stephenson said that he had no recollection of having been contacted to amend appellant's prescription to reflect the dosage of 75 milligrams. When asked about the possibility of such a change, the witness replied, "I suppose it's always a possibility." Dr. Stephenson subsequently stated, however, that it was his opinion that he had not written "75 milligrams" on the prescription.

The State next called two pharmacists whom appellant had contacted on January 20, 1983, to fill his prescription for Preludin. The first witness testified that appellant had presented the prescription, which failed to specify a dosage, around 2:45 p.m. Because the witness had not wished to delay his coffee break by telephoning Dr. Stephenson to obtain the correct strength, he told appellant that he did not carry the drug. The second pharmacist called by the State testified that he had filled appellant's prescription for Preludin, 75 milligrams. On rebuttal, he established that the prescription specified the strength of 75 milligrams when first presented by appellant. The witness did not testify as to the time of day that this transaction with appellant occurred.

The State called as its final witness the correctional officer for the county jail. He established that appellant had signed his name as "Eddie Broom" on a fingerprint card and a telephone memorandum.

We recently discussed, in two related cases, the type of conduct necessary for a defendant to "knowingly or intentionally" obtain "a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." Section 35–7–1033(a)(iii). *Robinson v. State*, Wyo., 678 P.2d 374 (1984); *Cronin v. State*, Wyo., 678 P.2d 370 (1984). We cited extensive authority for the proposition that criminal statutes such as ours proscribe the procurement of drugs through untruthfulness or nondisclosure, regardless of whether the defendant commits a fraud in the technical sense. We

found this concept compatible with the statute's purpose of preventing the distribution of controlled substances for other than valid medical reasons. Therefore, to sustain the conviction in the instant case, the evidence must support a finding, beyond a reasonable doubt, that appellant knowingly or intentionally obtained Preludin, 75 milligrams, through untruthfulness or other deceitful conduct, as contemplated by § 35–7–1033(a)(iii) and the court's instructions to the jury.

On appeal, the State does not rely on the theory, important at trial, that appellant obtained Preludin illegally through the use of a false name. Rather, the State contends that the circumstantial evidence is sufficient to establish beyond a reasonable doubt that appellant altered the prescription so as to read "75 mg." I cannot agree.

The evidence establishes that Dr. Stephenson prescribed Preludin for appellant but neglected to specify the dosage on the prescription form. The doctor examined the prescription and conceded the possibility that he had changed the form. Nothing in the record indicates that the doctor intended to prescribe a dosage other than 75 milligrams. If the prescribing physician could not state definitely that he had not amended the prescription, how could the jury be convinced beyond a reasonable doubt on this point?

In *Chavez v. State*, Wyo., 601 P.2d 166, 172 (1979), we examined the sufficiency of the evidence to justify the denial of a motion for a judgment of acquittal. The only inference which logically could be drawn from the facts of that case was the *possibility* that the defendant had possessed the requisite mental state for conviction. We concluded that the State had not carried its burden of establishing criminal intent beyond a reasonable doubt. 601 P.2d at 172. Similarly, in the instant case, the only inference that can be drawn from the record, given the testimony of the prescribing physician, is the *possibility* that appellant amended the prescription. Such inference fails to satisfy the State's burden of estab-

lishing the fraudulent procurement of Preludin beyond a reasonable doubt.

Neither does the record support a finding, beyond a reasonable doubt, that appellant furnished a false name to the doctor in order to obtain the drug. The only testimony in this regard indicates that the name "Eddie Opendack" may have come from the family medical records, filed under the surname "Opendack" and supplied by appellant's wife.

Since the evidence favorable to the State is insufficient to form the basis for a reasonable inference of criminal activity beyond a reasonable doubt, I would have reversed appellant's conviction and would have remanded the case to the district court for the entry of a judgment of acquittal.

### ORDER DENYING PETITION FOR REHEARING

Appellant having petitioned the Court for a rehearing of his appeal, the Court, being fully advised, finds that it gave full recognition to the holding of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and based its decision thereon; wherefore, it is

ORDERED that appellant's Petition for Rehearing be, and it hereby is, denied.